672 F.2d 444
 28 Fair Empl.Prac.Cas. 911,
28 Empl. Prac. Dec. P 32,608
Rose HARRELL, on behalf of herself and all persons similarly
situated, Plaintiff-Appellant,
v.
NORTHERN ELECTRIC COMPANY, Division of Sunbeam Corporation,
Defendant-Appellee.
 No. 80-3781.
 United States Court of Appeals,
Fifth Circuit.
 April 5, 1982.
 
 Alison Steiner, Martha Bergmark, Hattiesburg, Miss., for plaintiff-appellant.
 Walter W. Christy, New Orleans, La., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Mississippi.
 Before POLITZ and RANDALL, Circuit Judges*.
 POLITZ, Circuit Judge:
 
 
 1
 Rose Harrell invoked the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., against Northern Electric Company, a Division of Sunbeam Corporation (NECO), contending that NECO practiced discrimination against blacks in the hiring of clerical employees at its Hattiesburg, Mississippi facility. On Harrell's motion, the complaint was certified as a class action under Rule 23(a)(b)(2) of the Federal Rules of Civil Procedure. The court bifurcated the trial, and, at the close of evidence on the liability issue granted NECO's Fed.R.Civ.P. 41(b) motion to dismiss both the individual and class actions. We reverse and render on liability and remand with instructions for trial on the relief phase.
 
 
 2
 NECO manufactures small electrical appliances at several plants in Mississippi. Hiring for its Hattiesburg facility began in July 1974; operations commenced a few months later. The pertinent work force numbers about 550, ten percent is classified as clerical.
 
 
 3
 Harrell applied for employment at NECO's Hattiesburg plant in August of 1974, noting "office" as her first job preference and "machine" as her second choice. She was hired in September as a cord assembler on the production line. A few weeks later she was interviewed for a clerical job but was not reassigned.
 
 
 4
 NECO furloughed Harrell in January of 1975 and recalled her the following month. She quit shortly thereafter to seek clerical employment elsewhere and filed a complaint against NECO with the Equal Employment Opportunity Commission. Harrell's termination rating qualified her for re-employment and she was rehired as a production line worker in October of 1977.
 
 
 5
 After receipt of a Right to Sue Letter from the EEOC, Harrell filed suit maintaining that NECO assigned blacks exclusively to production line work, refusing to hire blacks for the better clerical positions for which they were qualified. Evidence adduced at trial was both specific, relating to treatment accorded Harrell and other applicants, and general, involving a consideration of statistical data.
 
 Threshold Considerations
 
 6
 The individual and class actions were dismissed on a finding that no prima facie case of discrimination had been established. This is a finding of ultimate fact. "The clearly erroneous standard of appellate review applies to subsidiary facts but does not apply to ultimate facts." Thompson v. Leland Police Dept., 633 F.2d 1111, 1112 (5th Cir. 1980). We make an independent determination of the ultimate issue of discrimination. Causey v. Ford Motor Company, 516 F.2d 416 (5th Cir. 1975).
 
 
 7
 NECO maintains that this case should be limited to a complaint of disparate treatment.[1] Recovery for disparate treatment requires proof of discriminatory intent. See Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Harrell argues the applicability of both the disparate treatment and disparate impact theories.[2] The restricted view advanced by NECO is not consistent with the liberal treatment of pleadings mandated by the Federal Rules of Civil Procedure.[3] Our review encompasses both bases of recovery.
 
 
 8
 We are mindful of the necessity that the allegations in the judicial complaint, and the proof offered, must be " 'reasonably related' to charges in the administrative filing," with "no material differences between them ...." Ray v. Freeman, 626 F.2d 439, 443 (5th Cir. 1980), cert. denied, 450 U.S. 997, 101 S.Ct. 1701, 68 L.Ed.2d 198 (1981) (citing Danner v. Phillips Petroleum Co., 447 F.2d 159 (5th Cir. 1971)). In its determination letter concluding the investigation of Harrell's complaint, the EEOC rejected Harrell's personal complaint of discrimination but stated "at least until the time of this investigation, (NECO) maintained a policy of failing or refusing to hire Black persons as a class in its office positions ... because of their Race." We may examine all claims reasonably related to the EEOC investigation.
 
 The Prima Facie Case-Disparate Impact
 
 9
 The facts essential to the disparate impact assessment were stipulated. Between August 1974 and December 1978, NECO received 582 applications for clerical positions; 80 of the applicants were black. A total of 175 persons were hired for clerical jobs, 165 white and 10 black. Of the total hired, 137 (129 white, 8 black) were direct hires; 28 (26 white, 2 black) were in-plant transfers; and 10 (all white) were transferred from other NECO facilities.
 
 
 10
 Based on these figures, appellant's expert, Dr. Robert Graber, testified that the percentage of black applicants (13.7%) was significantly more than the percentage of black hires (5.7%). Dr. Graber found a disparity near three standard deviations.[4] He testified that a variance in excess of 2.33 standard deviations is a "highly statistically significant disparity." In this calculation, Dr. Graber took into account both transfers and direct hires. NECO did not maintain records of transfer requests making it impossible to analyze the racial composition of transfer applicants. Viewing the data after deleting the transferees, we find 137 hired, 8 of whom were black. The disparity computed using this data exceeds 2.33 standard deviations.[5]
 
 
 11
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 12
 Appellants offered statistics provided by the Mississippi Employment Security Commission which reflect that 22% of all persons actively seeking clerical employment in the relevant geographic area were black. NECO challenged the reliability of this evidence by showing that the 22% represented the percentage of applications on file at the end of each month and did not take into consideration individuals who had applied and were placed during the month.
 
 
 13
 A fluctuation of more than two or three standard deviations undercuts the hypothesis that the hirings were made without respect to race. Hazelwood School District v. United States, 433 U.S. 299, 312 n.17, 97 S.Ct. 2736, 2743 n.17, 53 L.Ed.2d 768 (1977). Appellant's statistical basis is not perfect; however, the disparity between the percentages of blacks applying and those hired, considered in light of the total circumstances found in this record, is sufficient to raise a prima facie case of class discrimination. NECO is obliged to show that the disparity resulted from other than racial discrimination. See Phillips v. Joint Legislative Com., Etc., 637 F.2d 1014 (5th Cir. 1981).
 
 NECO's Refutation
 
 14
 NECO first challenges appellant's statistics for combining direct hires with transfers, resulting in a greater disparity than would have existed had transfers been excluded. We are not persuaded. The statistical evidence, considered within the framework of the totality of the evidence presented, is sufficient to make out a prima facie case whether or not the transfers are considered. Including the transfers simply presents a stronger statistical case.
 
 
 15
 NECO next challenges appellant's hiring figures for failing to take into account four blacks who were offered clerical jobs but declined employment. Good faith offers of employment would be relevant and material. This contention requires close examination, for if all four of the purported "offerees" are included in the calculations, the statistical disparity only slightly exceeds two standard deviations. If the "offerees" are included and the transferees are excluded, the disparity falls below two standard deviations, belying a prima facie case of discrimination.
 
 
 16
 NECO maintains that Janice Wilson (Richard), Deborah McGee, Carolyn Reed and Alan Thompkins refused to accept clerical jobs offered to them. Accepting, per arguendo, that these four black applicants were offered employment, the record is devoid of credible evidence that any of the four was offered clerical employment.
 
 
 17
 The employment applications of the four were offered as defense exhibits. In her application, Janice Wilson (Richard) gave "receptionist/secretary" as her first job preference and "clerical" as her second. An unsigned, undated, unidentified penciled notation in the margin reads "offered job-has accepted employment on other job." NECO's personnel director testified that he had no personal knowledge about the application but assumed that Wilson had been offered a clerical job because that was her stated preference. He conceded it was not unusual for NECO to offer an applicant a job other than that stated as a preference. Indeed, Harrell's experience attests to this practice. Richard testified that she never received a job offer from NECO. The record compels the conclusion that Richard was not offered a clerical job.
 
 
 18
 Carolyn Reed's application is even more ambiguous. Reed listed "general office clerk" as her first choice. The bottom margin contains the unidentified notation "Does not want typing position," next to a notation in the same handwriting "could work overtime." NECO's personnel director testified that although he was not employed by NECO at the time, he had heard that Reed had been offered a clerical position and assumed that to be the case because of the above notation about typing. A personnel representative at NECO testified that Reed had been offered a clerical job, but admitted he had no personal knowledge of that happening. Reed denied that she was ever offered a job by NECO. On this record it cannot be said that Reed was offered a clerical job.
 
 
 19
 The application of Alan Thompkins bears the margin notation "Called 8/23/77. Not interested now. Attending school." NECO's personnel director testified that he assumed Thompkins was offered a clerical job because that was his indicated preference. The personnel director had no personal knowledge about Thompkins. He did not know the author of the inscribed note.
 
 
 20
 Deborah McGee's application bears the glossation "never showed up for work." Again the personnel director had no personal knowledge about McGee, her application, or the notation, but assumed she had been offered a clerical job because that was her indicated preference.
 
 
 21
 Appellant offered the testimony of McGee and Thompkins, but the trial judge would not allow them to testify. Appellant made a proffer that if permitted to testify, each would deny that NECO extended a job offer.
 
 
 22
 The trial judge found that all four of these applicants had been offered a clerical appointment. This finding is clearly erroneous.
 
 
 23
 In addition to questioning the basis and methodology of appellant's disparate impact evidence, NECO sought to establish a business justification for its hiring practices. NECO contends that during the initial hiring period, until October 1974, it favored applicants with clerical experience. After this period, NECO suggests that only minimal skills were required. No specific skill level was established; no objective standards were adopted.
 
 
 24
 In considering an application for transfer into a clerical job, NECO asserts that it took into account the employee's work record, experience, knowledge, skill, education and seniority. If fairly used, these are valid considerations. The employer has the prerogative to establish qualifications. That prerogative is not plenary, however, for "an employer may not utilize wholly subjective standards by which to judge its employees' qualifications and then plead lack of qualification when its promotion process ... is challenged as discriminatory." See Crawford v. Western Elec. Co., Inc., 614 F.2d 1300, 1315 (5th Cir. 1980) (citing Rowe v. General Motors Corp., 457 F.2d 348, 358 (5th Cir. 1972)). Rowe condemned the subjective evaluations by white foremen of a black employee's "ability, merit, and capacity." 457 F.2d at 353. In the case before us, NECO used all white personnel to subjectively determine whether black outside applicants applying during the initial hiring period were qualified to do clerical work, and whether those subsequently applying possessed "minimally acceptable" skills. NECO's asserted criteria for evaluating transfers were equally subjective because NECO failed to prove they were applied in accordance with any standards or objective criteria. Under these circumstances, NECO's assertion that lack of qualifications justified its failure to hire blacks is insufficient refutation.
 
 
 25
 We conclude that NECO failed to refute appellant's prima facie showing of discrimination. Obviously appellant's case was based primarily on the statistical evidence. However, our conclusion involves an evaluation of the totality of the evidence presented. We note that NECO hired no black for a clerical position until after the EEOC complaint was filed. Further, NECO's explanation of the coincidental statistical variances strains our credulity.
 
 
 26
 We conclude that the class should have judgment against NECO and this cause must be remanded for trial on damages and for the fashioning of an appropriate remedy, all in accordance with our further instructions herein.
 
 Individual Claims
 
 27
 In Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Supreme Court refined the test for disparate treatment originally articulated in McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[6] Burdine did not alter the prima facie showing a plaintiff must demonstrate under McDonnell Douglas, which requires that a plaintiff show: (1) membership in a minority group; (2) an application for an open job for which he was qualified; (3) rejection; and (4) the employer continued to seek applicants. Burdine modified our interpretation of the burden placed on the defendant to rebut the prima facie case. The Supreme Court stated:
 
 
 28
 The defendant need not persuade the court that it was actually motivated by the proffered reasons.... It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.
 
 
 29
 450 U.S. at 254, 101 S.Ct. at 1094. The Court rejected the notion that the employer must show that the person chosen was better qualified than the person rejected. If the defendant succeeds in rebutting the prima facie case, the plaintiff is then given an opportunity to show that defendant's espoused reasons for the rejection were pretextual.
 
 A. Rose Harrell
 
 30
 Harrell demonstrated a prima facie case of employment discrimination. She was black; she applied for a clerical position in August 1974. Although hired for a production job, she was told she would be considered for a clerical assignment when one became available. In October or November of 1974 Harrell was interviewed for a clerical job she never got. Whether a clerical position was open on the exact date Harrell applied is not dispositive, for a "vacancy, within the meaning of the McDonnell Douglas test, need not exist on the precise day of application; any vacancies within a reasonable time must be considered as well." Phillips v. Joint Legislative Com., Etc., 637 F.2d at 1030. When Harrell was interviewed, NECO was no longer solely hiring clerical employees with experience. During high school, Harrell took courses in typing and bookkeeping. After graduating she took a vocational course in typing, bookkeeping and filing. During the period between employments at NECO, Harrell took additional vocational training in typing and bookkeeping and worked as a secretary for a year and a half.
 
 
 31
 It is not possible on the state of this record to conclude, as did the trial judge, that Harrell was not qualified. The district court's finding that Harrell was not qualified is clearly erroneous. We find to the contrary.
 
 
 32
 McDonnell Douglas requires a rejection, after which applicants are still sought. The record on this point is not subject to question. After Harrell was passed over, NECO continued to hire, hiring whites.
 
 
 33
 NECO rebuts the prima facie case by contending that the reason Harrell was not transferred was a poor work record. Harrell adequately demonstrated that this was not the true reason for the employment decision. Texas Dept. of Community Affairs v. Burdine, 405 U.S. at 256, 101 S.Ct. at 1095. For example, Harrell's personnel file contains an unsigned "warning" slip bearing an infraction date after Harrell quit working for NECO. The file also contains an absentee warning slip dated six days after Harrell left NECO. We find the other assertions that Harrell failed to make production of some unspecified rate, and that she was cautioned about talking, equally unpersuasive. When Harrell left NECO's employ in March 1975, her record was marked to reflect that she was eligible for rehiring and she was later rehired. We find and hold that the reasons advanced by NECO, to justify their hiring decisions affecting Harrell's application for clerical employment, are pretextual. Harrell is entitled to judgment against NECO. On remand, the court will determine damages and fashion an appropriate remedy.
 
 B. Betty Dagons
 
 34
 Betty Dagons had completed three years of college at Jackson State University, a year of vocational training, and had experience operating an adding machine prior to applying for a job with NECO. Her manifested interest in clerical work received even less consideration than that given Harrell. She was hired and remained in a production job. NECO contends Dagon was not transferred because of a poor work history. The record does not support this position. Dagons is entitled to relief. On remand appropriate damages and remedy will be determined.
 
 C. Patricia Ann Pittman
 
 35
 Patricia Ann Pittman sought clerical work at NECO in January 1977 and accepted production work when she was told that clerical work was unavailable. Pittman had 11/2 years of college, a year of vocational training and two years experience as a bookkeeper and receptionist/PBX operator. Pittman was interviewed for at least two open clerical positions prior to July 1977 and was rejected. NECO contends that Pittman was rejected because of a poor work history. We find no merit in this contention. Pittman is entitled to relief. On remand appropriate damages and remedy will be determined.
 
 D. Tommie Jean Smith Hinton
 
 36
 Tommie Jean Smith Hinton was referred to NECO in March 1975 by the Mississippi State Employment service. The referral related to a clerical position. There was a vacancy. Hinton was interviewed but not hired, ostensibly because she lacked prior experience. Hinton, a high school graduate, had a year of vocational training and secretarial experience. Thereafter, this position was filled by a white applicant with a similar background. The trial court erred in excluding Hinton's testimony, presumably because NECO had no prior notice that Hinton would testify. Hinton is entitled to relief. On remand appropriate damages and remedy will be determined.
 
 Conclusion
 
 37
 We reverse the judgment of the district court dismissing appellant's individual and class action. We render judgment in favor of appellant, individually, and on behalf of the class, against NECO, on the merits of the discrimination complaint. We remand to the district court for the Southern District of Mississippi for entry of an appropriate decree on liability, for trial on the damages portion, and for the fashioning of such remedy as may be found in order. We instruct the Chief Judge of the Southern District of Mississippi to assign this case on remand to someone other than the original trial judge.
 
 
 38
 REVERSED, RENDERED and REMANDED WITH INSTRUCTIONS.
 
 
 
 *
 Jack M. Gordon, District Judge of the Eastern District of Louisiana, sitting by designation, was a member of the panel which heard oral argument. Because of his death on March 4, 1982, this case is being decided by a quorum, 28 U.S.C. § 46(d)
 
 
 [1]
 NECO supports this position by referring to paragraph 10 of the complaint which alleges that "defendant has intentionally engaged in unlawful employment practices."
 
 
 [2]
 The Supreme Court noted the difference between disparate treatment and disparate impact in Teamsters v. United States, 431 U.S. 324, 335-36 n.15, 97 S.Ct. 1843, 1854 n.15, 52 L.Ed.2d 396 (1977):
 "Disparate treatment" ... is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. See, e.g., Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 265-266, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 ....
 Claims of disparate treatment may be distinguished from claims that stress "disparate impact." The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity .... Proof of discriminatory motive, we have held, is not required under a disparate-impact theory .... Either theory may, of course, be applied to a particular set of facts.
 (Emphasis added.)
 
 
 [3]
 Rule 15(b) of the Federal Rules of Civil Procedure provides that "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Both parties introduced statistical evidence which is relevant to both disparate impact and disparate treatment considerations
 
 
 [4]
 In Castaneda v. Partida, 430 U.S. 482, 496-97 n.17, 97 S.Ct. 1272, 1281 n.17, 51 L.Ed.2d 498 (1976), the Supreme Court addressed the definition, significance, and methodology of determining a standard deviation, which, adapted to the instant case would read:
 The measure of the predicted fluctuations from the expected value is the standard deviation, defined for the binominal distribution as the square root of the product of the total number in the sample (either 175 or 137) times the probability of selecting a (black-13.7%) times the probability of selecting a (white-86.3%).
 The Supreme Court noted that as a general rule, for a sample the size of that in Castaneda, if the difference between the expected value and the observed number is greater than two or three standard deviations, the challenged procedure becomes suspect.
 
 
 [5]
 Standard deviations may be calculated from raw data by this mathematical formula:
 N equals number hired; p equals percentage of black applicants; x equals number of blacks hired; the .5 is a correction factor for a pool this size; and q equals percentage of white applicants.
 
 
 [6]
 For recent expositions of Burdine in this circuit see Sanchez v. Texas Commission on Alcoholism, 660 F.2d 658 (5th Cir. 1981); Johnson v. Uncle Ben's, Inc., 657 F.2d 750 (5th Cir. 1981); Jackson v. City of Killeen, 654 F.2d 1181 (5th Cir. 1981); Sessions v. Rusk State Hospital, 648 F.2d 1066 (5th Cir. 1981)