Andrew L. HILL, Roosevelt Coleman, Jr., Joe L. Lock, Walter J. Jones and Freddie Lee, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

SEABOARD COAST LINE RAILROAD COMPANY, Defendant.

No. 81–697–Civ–T–WC.

United States District Court, M.D. Florida, Tampa Division.

Nov. 2, 1983.

Robert F. McKee, Law Offices of Frank & Kelly, P.A., Tampa, Fla., for plaintiffs.

John M. Breckenridge, Greene, Mann, Rowe, Stanton, Mastry & Burton, Tampa, Fla., for defendant.

## OPINION

CASTAGNA, District Judge.

This matter came before the Court through a non-jury trial on March 21 and 22, 1983. Plaintiffs, five black citizens of the United States who are employees of the Defendant railroad, brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, complaining that Defendant discriminated against them in failing to promote them to the supervisory position of carman/foreman.

Between January 1, 1980 and July, 1980, each Plaintiff was employed as a journeyman/carman in the Car Department of Defendant's Tampa Division. During this relevant time period at least five carman/foreman positions became vacant. Each Plaintiff contends that he was qualified for the job but was passed over for promotion in favor of a white employee solely on the basis of race. The parties stipulated that the Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b). Plaintiffs seek equitable relief, attorneys fees, costs, and such other relief as the Court may deem appropriate.

Based on the testimony and exhibits presented at trial, the Court arrives at the following findings and conclusions:

### Findings of Fact

During the relevant time frame, 267 white employees and 37 black employees were eligible for promotion to the foreman position. Five whites were selected and 262 were rejected. One black was selected and 36 were rejected. One black journeyman who was selected, Joseph Williams, did not accept the position. Also during this time frame Plaintiff Coleman was appointed to a foreman position on a temporary basis only but was unable to retain the position due to a cutback in available funds. On August 16, 1980, L.J. Walters became the first black journeyman/carman promoted to foreman. During the relevant time frame, all of the Defendant's supervisory personnel with input into the promotion decisionmaking process were white.

The Defendant's promotion process is at the core of this controversy. The selection of the employees to be promoted was made by the Master Mechanic of the Tampa Division Car Department, R.D. Brigman, who had held that position since February, 1980. The deposition of Defendant's Division Superintendent was offered to show that, although the Division Superintendent has the option to approve or disapprove the Master Mechanic's recommendation, in reality the Master Mechanic's recommendation was invariably accepted.

During the relevant time frame there existed no formal or written procedure for the Master Mechanic's use in selecting a new foreman. Brigman testified that the procedure he followed was to look at the seniority roster of available journeymen/carmen and to narrow the list down to six or eight candidates whom he felt, by relying on the verbal recommendations of his supervisors and his own observations, were most qualified. Then he would examine the personnel files of the "finalists" in some depth to make his selection. Brigman testified that the vacancies were not posted and applications were not sought. All of the journeymen/carmen were automatically considered when a vacancy occurred, and the employees' expressions of interest in promotion were in some way considered.

Significantly, the criteria by which the Master Mechanic judged those considered

for promotion had never been reduced to writing prior to the institution of this litigation. Thus, those interested in promotion had no way of knowing the desirable or even necessary qualifications for the carman/foreman position unless they asked and if they did ask, there were no specific qualifications to which they could be referred. Furthermore, those who were not selected were never informed of the reasons they were passed over and consequently they could not remedy any of their shortcomings.

The Defendant's failure to publish its promotion standards not only compounded the obstacles in the way of those who might desire to become carmen/foremen, it also reflected upon the lack of specificity in those standards actually employed to judge the qualifications of those considered for promotion. Defendant contended that there did exist actual promotion standards, both subjective and objective in nature. These were as outlined in Defendant's answer to Plaintiff's Interrogatory No. 7, which, Brigman admitted, was the first time they had been formulated in writing. The qualifications the Master Mechanic would consider included four years' experience in car repairs, familiarity with rules and regulations, intelligence and aptitude, verbal and written communication skills, punctual and regular work attendance, harmonious relationships with supervisors, trustworthiness, reliability, and prior supervisory experience. In addition to receiving comments from supervisors concerning these qualifications, the Master Mechanic claimed to also have considered certain objective evidence found in the personnel files. These included the date on which the eligible journeymen/carmen were employed, their grades on the car inspector exam, the number of personal injuries or accidents they had had, their attendance record, whether their files contained disciplinary action or letters, and whether they had prior supervisory experience.

Although the Master Mechanic testified that he actually considered all of the above criteria in evaluating at least those who reached the final stage of consideration, he was vague as to the weight to be given any of the criteria. In fact, he admitted that he was uncertain as to which qualities were required and which were merely preferred; therefore, a prospective candidate for the job probably could not know either. Furthermore, Mr. Brigman was able only vaguely to define certain of the criteria. For instance, trustworthiness, reliability and dependability were all qualities that appeared to be linked in Mr. Brigman's mind to an employee's punctuality and attendance.

The Master Mechanic was also vague in demonstrating exactly how he measured each prospective carman/foreman's qualifications. Several examples from Brigman's discussions of the Plaintiff's qualifications are instructive. Brigman testified, for example, that Plaintiff Hill lacked the requisite verbal and written communications skills. He determined this, he said, from conversations with the assistant master mechanic, the general foreman, and Hill's supervisors. These conversations took place over a period of some months or years, and he did not know on what basis those he had consulted had formulated their opinions. Although he testified that Hill's lack of sufficient verbal and written communications skills was reflected "objectively" in the answers Hill had written in his car inspector's exam and in the personal injury reports Hill had written, Brigman was unable to specifically substantiate that opinion. Another example of the Master Mechanic's vague application of the promotion standards is his conclusion that Plaintiff Jones lacked the necessary communications skills, intelligence, and aptitude; the fact that Jones had nine personal injuries, Brigman felt, in some unspecified way, reflected upon Jones' intelligence. Mr. Brigman was equally vague about Plaintiff Lee's lack of written communications skills. Brigman concluded that Lee was deficient in this area from his own conversations with Lee, in which Lee failed to use the kind of language Brigman thought he would need to use if he were required to reduce his ideas to written form.

The conclusion the Court draws from the testimony that Defendant presented concerning the standards for promotion is not, as Plaintiffs contend, that those standards were totally subjective; rather, they were so unspecific as to render application of most of them to a particular applicant very subjective. This conclusion is reinforced by the evidence presented that the Master Mechanic placed substantial reliance on subjective statements received from the employees' supervisors.

The inference the Court can and does draw from its review of this testimony is that the entire promotion process was not orderly. Doubt is thus cast upon the Defendant's assertion that the Master Mechanic actually conducted a review of every Plaintiff's personnel file each of the five times that a white applicant was chosen for promotion during the relevant time frame. Because Brigman appears to have placed substantial reliance on the negative comments of his supervisors relating to certain of the Plaintiffs' skills, it seems highly unlikely that all five of the Plaintiffs would have been among the six or eight finalists whose personnel files would have been examined for objective qualifications before the Master Mechanic made his promotion decision in each case.

The Defendant maintained that the five black Plaintiffs were passed over for promotion not for any reason related to their race but simply because they were less qualified than the white journeymen/carmen who were chosen. Defendant presented the deposition testimony of the Plaintiffs concerning their qualifications. None of the Plaintiffs testified that he was more qualified than those who were promoted. Plaintiff Hill made no claim to have been better qualified than those who were promoted; instead he felt he was "on an even keel" with the others. Plaintiff Jones testified that he thought he was "on an equal basis" with those who were promoted. Plaintiff Lock said that he thought he was as good as the five white men. And Plaintiff Lee stated that he was "smarter right to the same level" or as good as those who were promoted.

Defendant also presented the testimony of Master Mechanic Brigman, who related certain information found in the personnel files of the whites who were promoted and of the blacks who were not. All of the promoted employees made better scores on their car inspector's exam than did all of the Plaintiffs except Coleman. None of the promoted whites had received disciplinary letters or warning. In contrast, Plaintiff Hill had received a letter of caution; Plaintiff Lee had received a letter of reprimand; and Plaintiff Jones had been reprimanded for his tardiness and absenteeism. Except for Real, who had been employed 33 years, all of the whites promoted had fewer personal injuries than the black Plaintiffs.

No specific testimony was elicited concerning the other qualifications of the whites that Defendant had allegedly considered, such as their ability to maintain a harmonious working relationship; their loyalty, trustworthiness, and reliability; and their conscientious attitude. Furthermore, Brigman admitted on cross-examination that time and attendance records were not available for all of the promoted whites, and that he had not even investigated the time and attendance records of the white man, Bernard, who was promoted but later demoted when Brigman received a complaint from the carmen's union concerning Bernard's bad work record. These admissions are significant in light of the emphasis Brigman had placed on attendance and punctuality as an objective factor in the decision to promote; and they further substantiate that the standards, which were vague and had not been articulated during the relevant time frame, were not applied in a systematic manner. Thus, the Court can not attach undue weight to such objective comparisons as the Defendant was able to make.

### Conclusions of Law

The Court has jurisdiction of this matter pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f).

■ Plaintiffs established a *prima facie* case of intentional discrimination. Under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), a Plaintiff must show: (i) that he belongs to a racial minority; (ii) that he applied for and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

In this case each Plaintiff was a member of the black race, a minority. The Defendant did not "seek" applicants for the position; however, since all journeymen/carmen were considered for the foreman job the Plaintiffs can be said to have been qualified for and to have "applied" for the job. The Plaintiffs were rejected and the Defendant sought "applicants" from other members of the journeymen/carmen ranks.

■ Once the Plaintiffs made out their *prima facie* case, the burden of production shifted to the Defendant

> to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons .... It is sufficient if the defendant's evidence raise a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant.

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). If the Defendant does not produce such evidence, then the presumption persists that the Defendant's acts were "more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

Defendant has contended that Master Mechanic Brigman's testimony contained clearly articulated reasons for selection of the white candidates over Plaintiffs. These reasons essentially were that those white persons promoted were more qualified for the carman/foreman position than were the black Plaintiffs; or that the Plaintiffs, with the exception of Plaintiff Coleman, although eligible for promotion in meeting certain minimal criteria, were not qualified for the carman/foreman job.

■ Although the Defendant's statement of its reason for failing to promote the Plaintiffs appears clear enough, the Defendant did not produce sufficient evidence to overcome the presumption of discrimination established by the Plaintiffs' *prima facie* case. In reaching this conclusion the Court has considered a number of factors. Of some significance is the historical predicate behind this situation. The evidence showed that no black journeyman/carman had ever actually been promoted to the foreman position until after the relevant time frame of this litigation. The Defendant's promotion standards were not specific and entailed substantial reliance on subjective evaluations. Furthermore, although Defendant claimed to have relied also on certain objective standards, it failed to articulate the significance of the discrepancies in the objective data to be found in each employee's personnel record. Finally, certain problems inherent in the Defendant's promotion system—that the prospective candidates were not informed when the opportunity for promotion arose; that the journeymen had no knowledge of the standards by which they were judged or whether they were being considered; and that the journeymen never received feedback in the form of reports of why anyone who might have expressed interest was not promoted—made it so easy for the Defendant to implement a discriminatory motive that the Court can almost presume its existence.

Although this case is not exactly analogous to the situation involved in *Harrell v. Northern Electric Co.*, 672 F.2d 444 (5th Cir.1982), the Plaintiffs in that case sued a Defendant that used a hiring system involving subjective evaluations of minority applicants by white personnel, together with assertedly objective considerations that were not applied in accordance with any objective standards. The Court held that "[u]nder these circumstances, [Defendant's] assertion that lack of qualifications justified its failure to hire blacks is insufficient refutation." 672 F.2d at 448. In this case, the problem that the Court has had to confront has been the result of the Defendant's failure to formulate, articulate and implement a clear, specific and proper promotion plan, and equity requires the Defendant, rather than the Plaintiffs, to bear the consequences of that failure.

The Plaintiffs shall file their memorandum on the issue of damages on or before November 15, 1983. Defendant shall file its response thereto on or before November 30, 1983.