Andrew L. HILL, Roosevelt Coleman, Jr., Joe L. Lock, Walter J. Jones and Freddie Lee, Plaintiffs,

v.

SEABOARD COAST LINE RAILROAD COMPANY, Defendant.

No. 81–697–Civ–T–15.

United States District Court, M.D. Florida, Tampa Division.

Aug. 14, 1986.

Robert F. McKee, Tampa, Fla., for plaintiffs.

John M. Breckenridge, Jr., Robbins, Gaynor, Burton, Hampp, Burns, Bronstein & Shasteen, P.A., Tampa, Fla., for defendant.

## MEMORANDUM OPINION

CASTAGNA, District Judge.

In accordance with the instructions set forth in *Hill v. Seaboard Coast Line R. Co.*, 767 F.2d 771 (11th Cir.1985) and in an effort to resolve what the appellate court has determined to be conflicts in earlier decisions in this case [1] the Court has reviewed the record as to the plaintiffs' disparate treatment and disparate impact claims. The Court has reviewed the briefs on remand and oral argument is not warranted.

The non-jury trial was held on March 21 and 22, 1983. Plaintiffs, five black employees of the defendant railroad, brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., complaining that defendant discriminated against them in failing to promote them to the supervisory position of carman/foreman.

Between January 1, 1980 and July, 1980, each plaintiff was employed as a journeyman/carman in the Car Department of defendant's Tampa division. During this relevant time period at least five carman/foreman positions became vacant. Each plaintiff contends that he was qualified for the job but was passed over for promotion in favor of a white employee solely on the basis of race. The parties stipulated that the defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

At the outset the Court notes that the testimony of R.D. Brigman, the Master Mechanic of the Tampa Division Car Department constitutes approximately 80% of the testimony in the trial record and that he was the primary witness in the plaintiffs' case in chief and in the defendant's case. Moreover, the vast majority of Mr. Brigman's testimony was uncontested other than by argument. Comment on the demeanor and credibility of Mr. Brigman is warranted.

Mr. Brigman took the stand as the physical embodiment or personification of the selection process under attack. In a practical sense, as to the treatment claim, he was on trial. It was established that all decisionmaking authority with regard to promotions to the carman/foreman ranks was vested in him, that he alone made such decisions and that his decisions were subject to very little, if any, review.

It was neither conflicting, illogical nor ambiguous to omit a finding on plaintiffs' qualifications when a review of the trial record and defendant's post-trial memorandum clearly shows that the defendant conceded at trial and in its memorandum that the issue of whether the plaintiffs were qualified was not in dispute and stated clearly that the issue in dispute was whether or not the promoted white employees were more or less qualified than the plaintiffs. *See infra* note 2 and accompanying text. It was only after the trial, after the defendant submitted its post-trial memorandum and after the trial Court's opinion was rendered that the defendant recanted its concession, took the position that the evidence did not show the plaintiffs to be qualified, and began criticizing the trial Court's omission of specific findings as to qualifications. Remanding the case for specific findings based on the "evidence" has granted the defendant another bite at the apple in the form of a rehearing of an issue that was not disputed by defendant at the trial.

---

1. In *Hill v. Seaboard Coast Line R. Co.*, 573 F.Supp. 1079 (M.D.Fla.1983) this Court found in favor of the plaintiffs on the issue of liability under the disparate treatment theory of unlawful employment discrimination. In reaching that conclusion the Court stated that "Plaintiffs can be said to have been qualified for and to have 'applied' for the job." *Id.* at 1083. Thereafter, and on appeal, the defendant complained that the Court had erred when it found liability without stating a specific *finding* that the plaintiffs were qualified for the promotions in question. The appellate court concluded that a finding of liability in a disparate treatment case without a finding that the plaintiffs were qualified for the job was "conflicting, illogical, and ambiguous" and, rather than allow the trial Court an opportunity to explain its reasoning further, remanded the matter for specific findings of fact based on all the evidence. *See Hill v. Seaboard Coast Line R. Co.*, 767 F.2d 771, 773–75.

For the most part the Court viewed Mr. Brigman as credible and he was not impeached to any significant degree. That is to say that the plaintiffs did not show that he was not truthful but only that he was at times confused or unable to provide detailed answers to the multitude of specific questions posed. In this Court's opinion Mr. Brigman made a sincere effort to answer questions to the best of his ability. At the same time, however, many of his answers did reveal a somewhat seat of the pants or ad hoc management style coupled with Seaboard's unstructured and somewhat amorphous promotion policy. On several issues he was difficult to pin down. As Mr. Brigman understated during his testimony in the plaintiffs' case "It is a difficult process electing someone to be a supervisor. It is not a perfect science, by any means." *See* Trial Transcript at 147. The record to a large extent confirms his observation.

### Disparate Treatment

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), to make a showing of a prima facie case of intentional discrimination, a plaintiff must show:

(i) that he belongs to a racial minority; (ii) that he applied for and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv)

that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

In this case there is no question that the plaintiffs are black and that they were rejected for promotion.

As was stated in *Hill v. Seaboard Coast Line R. Co.*, 573 F.Supp. 1079, 1080 (M.D. Fla.1983), the defendant's promotion process is at the core of this controversy. During the relevant time frame at Seaboard there existed no formal or written procedure for the master mechanic to use in selecting persons for promotion to carman/foreman. Mr. Brigman testified that he knew what the company wanted and that the procedure he followed when deciding who to promote was to look at the seniority roster of available journeymen/carmen and to narrow the list down to six or eight candidates whom he felt, by relying on the verbal recommendations of his supervisors and his own observations, were most qualified. Then he would examine the personnel files of the "finalists" in some depth to make his selection. Brigman testified that the vacancies were not posted and applications were not sought. All of the journeymen/carmen were automatically considered when a vacancy occurred, and the defendant conceded that the plaintiffs were qualified to be carmen/foremen.[2]

---

**2.** Although Mr. Brigman did testify during the plaintiffs' case that only plaintiff Coleman was qualified, the *defendant* later, somewhat ironically, introduced contrary testimony in the form of the plaintiffs' depositions to the effect that all of the plaintiffs were qualified. This briefly but fairly and essentially summarizes the evidentiary record on the issue of plaintiffs' qualifications.

In any event, defendant's attorney, Mr. Breckenridge, conceded that the plaintiffs were qualified during his argument at the close of the plaintiffs' case when he stated:

"Factor number two [of the prima facie case] is that [plaintiffs] applied for and [were] qualified for a job for which the defendant was seeking applicants. We concede that the plaintiffs were in the eligible pool of candidates to be selected for the position of carman-foreman. We concede that they were, in

fact, considered and the evidence before the Court shows that they were considered...." *See* Trial Transcript at 183. Furthermore, in the defendant's post trial memorandum, which was filed in lieu of a closing argument, Mr. Breckenridge clearly and unambiguously stated:

"There is no dispute that plaintiffs in the instant case have met their burden on the first three requirements [of the *McDonnell-Douglas* four pronged test]; thus, the focal point is whether or not the position either remained open while Seaboard looked for persons with the same qualifications or a person with inferior qualifications who was not a member of a protected class, was in fact promoted." *See* Defendant's Brief, *Hill, et. al. v. Seaboard Coast Line R. Co.*, Case No. 81–697 Civ. T–15 (April 25, 1983) at 22–23.

This position was totally consistent with the defendant's trial brief wherein Mr. Breckenridge stated:

Since the trial the defendant has recanted its concession on the issue of plaintiffs' qualifications and the appellate court has pointed out that the trial court did not make a specific finding as to plaintiffs' qualifications. Rather, the trial Court stated that "Plaintiffs can be said to have been qualified for and to have 'applied' for the job." 573 F.Supp. at 1083.

The Court has given the testimony on the qualifications issue greater scrutiny. The most thorough and substantial testimony on the issue of plaintiffs' qualifications came from Mr. Brigman and it was elicited mostly during the plaintiffs' case in chief. That testimony was that each plaintiff was eligible for consideration but that only plaintiff Coleman was qualified to be a carman/foreman. With respect to each of the plaintiffs, Mr. Brigman gave his assessment of their strengths and weaknesses with regard to his list of mandatory and preferred qualifying criteria.

■ Significantly, the plaintiffs offered nothing other than argument to contest the validity of the criteria that Mr. Brigman said he used or to cast doubt upon whether he in fact did follow the decision process that he professed. At most, the plaintiffs showed that Mr. Brigman was not a model manager, was not always thorough in his evaluations, placed great weight on the opinions of lower level supervisors, and did not have total recall or complete records to explain all of his decisions. But the plaintiffs did not show or provide the Court with any satisfactory basis for concluding that Mr. Brigman was wrong in his assessment of plaintiffs' qualifications or that the deci-

sionmaking process he used to assess their qualifications was any different than that which he used with non-minority candidates.

The plaintiffs argue that because the process was subjective, i.e., because Mr. Brigman made the decision based on who he thought was qualified, it would be impossible to show he was wrong and that they were in fact qualified. Although the decision was Mr. Brigman's alone, he did show that the process had some objective manifestations such as test scores, attendance records, disciplinary history, written communications skills, etc. The plaintiffs failed to show that any of these criteria were invalid or that Mr. Brigman's assessment of their abilities as measured against those criteria was wrong. Although the process had strong subjective overtones, the record shows that the decision was not made simply on the basis of who Mr. Brigman "liked."

The plaintiffs put on three witnesses. Mr. Cherry stated that he deferred to Mr. Brigman regarding carman/foreman promotions and plaintiff Coleman stated that he was not offered a foreman position until after this litigation began. Mr. Brigman provided the only testimony as to qualifications and he was not contradicted or impeached in that regard. The Court notes that during the defendant's case deposition testimony of the plaintiffs was received and that the gist of that testimony was that plaintiffs thought they were qualified to be foremen because they felt they were as qualified as the whites that got promot-

"In each case the plaintiffs were considered to have basic qualifications, as they had attained journeymen-carmen status, and were considered in the pool of candidates for promotion because of the affirmative aspects of employer's operation. They did not, however, receive the promotions in question because they were not the most qualified candidates." *See id.* Defendant's Trial Memorandum (March 21, 1983) at 7. Moreover, the issue of whether the plaintiffs were qualified was not listed as a fact to be litigated in the pre-trial stipulation. *See id.* Pre-Trial Stipulation (February 18, 1983). The Court notes that throughout the record the focal issue in the case was stated to

be whether or not the promoted white employees were more or less qualified than the plaintiffs, not whether or not the plaintiffs were qualified.

Finally, although the defendant did contend that Mr. Brigman's testimony contained reasons for the selection of the white candidates over the plaintiffs, and while it is correct that one of *witness* Brigman's reasons as to four of the plaintiffs was that they were not qualified, the *defendant* did not contend that the plaintiffs were not qualified, but only that they were less qualified than the white employees who were promoted.

ed. At least one plaintiff felt he was qualified to be a foreman simply by virtue of his being eligible for consideration. If anything, the plaintiffs' assessments of their own qualifications are more subjective than Mr. Brigman's assessments and do not establish that they were in fact qualified. The Court therefore finds that, except as to Mr. Coleman, plaintiffs have failed to show that they were qualified for the foreman position.

The next issue on disparate treatment is whether a non-minority who was less qualified than plaintiff Coleman was given a promotion to carman/foreman during the relevant time frame. This is the fourth prong of the *McDonnell Douglas* prima facie case. The first question is whether the pure or literal *McDonnell Douglas* fourth prong applies in this case and the Court finds that the literal "position remained open and employer continued to seek applicants" version of the fourth prong as stated in *McDonnell Douglas* clearly is not applicable in this case because the promote and reject decisions, as a practical matter, were made simultaneously as the pool of eligible candidates was considered. In this case, the relevant inquiry as to the fourth prong is whether a less qualified non-minority was promoted over plaintiff Coleman, a qualified minority applicant.

█ As to the issue of whether a less qualified white employee was promoted over plaintiff Coleman, the record is clear that at least one was. Mr. Brigman testified that Mr. Coleman was qualified to be a carman/foreman. *See* Trial Transcript at 81. Mr. Brigman later testified that Mr. Benard's promotion to carman/foreman on June 23, 1980 was not warranted because Mr. Benard's pre-promotion work record was bad. *See* Trial Transcript at 287–88. In essence, Mr. Brigman testified that he did not investigate Mr. Benard and that Benard really was not qualified when he was promoted. *See* Trial Transcript 287–88 and 301.

█ The Court concludes that plaintiff Coleman has met each of the requirements of a prima facie case of intentional discrimination. The next question is whether the defendant articulated a nondiscriminatory reason for denying plaintiff Coleman the promotion that was given to Benard. Mr. Brigman, attempted to explain that Mr. Bernard mistakenly was promoted because of a need to promote someone quickly to fill an unexpected vacancy in the carman/foreman ranks. On this point the Court finds that Mr. Brigman was less than candid and that his explanation does not square with his extensive testimony throughout the trial about the extensive and important decisionmaking process that was necessary to make sure that the person promoted was the most qualified candidate. The Court concludes that the explanation is pretextual. The reasonable inference from this record is that Mr. Brigman knew that Mr. Coleman was qualified for the carman/foreman position because he had considered him for such a promotion and determined that he was qualified but that despite Mr. Coleman's qualifications Mr. Brigman promoted Mr. Benard without thoroughly evaluating him in an effort to avoid promoting Mr. Coleman and that that decision was made with discriminatory intent.

### Disparate Impact

█ The appellate court has instructed this Court to reconsider the dismissal of the disparate impact claim in light of *Griffin v. Carlin,* 755 F.2d 1516, 1523 (11th Cir.1985) because a disparate impact theory may be used to challenge subjective elements of a selection process.

The plaintiffs contend that because no black ever was promoted to the carman/foreman ranks prior to the beginning of this litigation the Court should conclude that defendant's "subjective" promotion process had an unlawful discriminatory impact on the progress of black employees. However, the plaintiffs' impact theory is not supported by the facts in this case. The plaintiffs' conclusions in that regard can only be reached by inferential leaps that are not grounded in the record.

The defendant's promotion process was not purely "subjective." Rather, it was a process in which one person was allowed to determine who was qualified for promotion and in this case that one person did show that he used several valid and, to a large extent objective and verifiable, criteria in making his promotion decisions. None of the criteria was shown to have an unlawful impact on blacks and there is nothing about the process as a whole that is necessarily or inherently discriminatory. Indeed, the disparate treatment that occurred in this case was caused by Mr. Brigman's abdication of his proper role and responsibility when he promoted Mr. Benard over Mr. Coleman, not because the process failed to identify the more qualified black candidate. Mr. Coleman was not a victim of impact but of intent. In this case the unlawful result was intentional, not systemic. The Court further notes that during the relevant time period at least one black was offered a promotion to the carman/foreman level but turned it down for financial reasons.

In conclusion on the issue of liability, the Court finds that dismissal was warranted with regard to the plaintiffs' claims of disparate impact and that only plaintiff Coleman prevails on the claim of disparate treatment.

The appellate court has instructed the Court to fashion a remedy so that the relief accorded the successful plaintiff is in harmony with the new findings of fact and to consider prospective relief in addition to or in lieu of money damages. The Court concludes that in view of the new findings and the time that has passed since the discriminatory act of promoting Benard over Coleman took place (June 23, 1980) new submissions are warranted and that argument should be scheduled on the damages/remedies issue. Upon consideration of damages and remedies the Court will entertain pleadings on the attorneys fees issue if the parties are unable, after a good faith effort, to agree upon a *reasonable* award for plaintiffs' counsel.

The plaintiffs shall file their memorandum on the damages/remedies issue on or before September 8, 1986. Defendant shall file its response thereto on or before September 22, 1986. No extensions will be allowed except for the most extenuating circumstances. Oral argument shall be heard on Friday, September 26, 1986 at 9:30 a.m. and each side shall have approximately thirty minutes.