**Emile STEPHEN, Plaintiff–Appellee,**

v.

**PGA SHERATON RESORT, LTD., Defendant–Appellant.**

**Nos. 87–5968, 88–5033.**

United States Court of Appeals, Eleventh Circuit.

May 23, 1989.

---

6. We conclude that the other claims raised by   appellants are meritless.

Philip M. Burlington, Edna L. Caruso, P.A., West Palm Beach, Fla., for defendant-appellant.

Douglas S. McDowell, Washington, D.C., for amicus—Equal Employment Adv. Council.

Mark A. Cullen, Cullen & Szymoniak, P.A., Lynn E. Szymoniak, West Palm Beach, Fla., for plaintiff-appellee.

Before FAY and ANDERSON, Circuit Judges, and ALLGOOD *, Senior District Judge.

ANDERSON, Circuit Judge:

Defendant PGA Sheraton Resort, Ltd. ("PGA Sheraton" or "employer") appeals from a judgment of the district court finding its classification and discharge practices to have disparately impacted plaintiff, former employee Emile Stephen ("Stephen" or "employee"), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Because the district court found that Stephen's employment was terminated for a legitimate business reason—that he could not speak or understand English well enough to perform his job—PGA Sheraton successfully rebutted any presumption of discrimination with respect to this plaintiff. Accordingly, the judgment of the district court is reversed and the case is remanded with instructions to enter judgment on the disparate impact claim in favor of the employer.

## FACTS

Emile Stephen is a black male of Haitian origin who was employed as a purchasing clerk by PGA Sheraton from November 13, 1985 until February 4, 1986.[1] Stephen's responsibilities included keeping track of inventory, filling orders, typing, filing forms and making deliveries of supplies to many of the departments at PGA Sheraton. As part of his job Stephen was required to take orders for the supplies that he was required to deliver. The district court found that Stephen could not understand English well enough to perform his assigned duty of bringing supplies to the various departments. His inability to understand English resulted in the misdelivery of supplies. At least one employee had to obtain her own supplies on several occasions.

On February 4, 1986 Stephen's supervisor informed him that he was being terminated from his position with the Purchasing Department. Stephen's job in the Purchasing Department remained vacant for approximately one month. It was eventually filled by a black male of Jamaican origin.[2]

Upon being relieved of his responsibilities in the Purchasing Department, Stephen was offered a job in the Housekeeping Department which involved setting up for banquets. Evidence at trial established that the Housekeeping Department is com-

---

* Honorable Clarence W. Allgood, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. Stephen was hired at the rate of $5.50 per hour and was promised a $.50 per hour raise upon completion of ninety days of employment. Stephen's ninety day period would have ended February 10, 1986.

2. Stephen admitted at trial that when he filed his claim of discrimination with the Equal Employment Opportunity Commission, he asserted that he had been replaced at PGA Sheraton by a white employee, when in fact this was not true. *Stephen v. PGA Sheraton Resort, Ltd.,* 669 F.Supp. 1573, 1575 (S.D.Fla.1987).

posed mainly of black employees.[3] It was also established that the housekeeping position was lower paying and offered less opportunity for advancement than his former job. Stephen declined to accept the housekeeping job.

At Stephen's request, his supervisor wrote a letter of recommendation on his behalf. The letter characterized Stephen as a "hard working employee, [who] d[id] what was asked of him." The supervisor testified that he wrote the letter because he felt sorry for Stephen, because Stephen impressed him as being a nice person who had endeavored to perform his job. The district court found this a "reasonable and credible explanation." 669 F.Supp. 1573, 1583.

Following his termination, Stephen filed a complaint with the Equal Employment Opportunity Commission, claiming that he had been discharged because of racial discrimination. After conducting an investigation the Commission issued a determination letter finding no reasonable grounds for the allegation. Stephen subsequently filed a complaint in district court claiming that he had been discharged because of his race, and alleging disparate treatment and disparate impact resulting from PGA Sheraton's classification and discharge of black employees. Stephen sought relief pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (1981), and 42 U.S.C. § 1981 (1981), in the form of a permanent injunction, reinstatement, back pay and fringe benefits, attorney's fees and compensatory damages.

The cause proceeded to trial before a jury on the § 1981 claim and, in the same proceeding, Stephen presented evidence to the trial judge on the Title VII claims. The jury returned a verdict for defendant on the § 1981 claim and, following the submission by the parties of proposed findings of

fact and conclusions of law, the court entered its judgment and opinion.

The court found in favor of PGA Sheraton on the disparate treatment claim, holding that it had successfully rebutted Stephen's prima facie case of intentional discrimination by demonstrating that Stephen was discharged for a legitimate non-discriminatory reason, i.e., "the plaintiff did not adequately perform his job because of the plaintiff's inability to speak and understand English." 669 F.Supp. at 1583.

With respect to the disparate impact claim, the court found that the plaintiff had, through the use of statistics, established a prima facie case of discrimination in PGA Sheraton's job classification scheme and its discharge practices. The court held that the defendant had not rebutted the presumption of discrimination by showing the unreliability of plaintiff's statistical proof or by demonstrating that the challenged business practices were justified by business necessity. Accordingly, the court found that PGA Sheraton's employee classification practices and discharge practices violated Title VII, and ordered that Stephen be reinstated to a comparable position to the one he held prior to termination, and that he be awarded back pay, including fringe benefits. The court denied Stephen's request for injunctive relief.

Thereafter, plaintiff's counsel filed a Motion for Attorney's Fees, which the court granted. Plaintiff does not appeal the judgments in favor of PGA Sheraton on the § 1981 claim and the disparate treatment claim. The only appeal filed was by PGA Sheraton challenging the judgments in favor of plaintiff on the disparate impact claim and on the claim for attorney's fees.

## DISCUSSION

Disparate impact claims brought pursuant to Title VII of the Civil Rights Act[4]

---

**3.** In March 1985 there were four whites and fifty-eight blacks employed in the Housekeeping Department. In March 1986 nine whites and fifty-six blacks were working in the Department.

**4.** Section 703 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, provides in relevant part:
    (a) It shall be an unlawful employment practice for an employer—
      (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate

seek to show that facially neutral employment practices have significant adverse effects on protected groups, even in the absence of proof that the employer adopted those practices with a discriminatory intent. *See Watson v. Fort Worth Bank and Trust,* — U.S. —, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827 (1988); *Powers v. Alabama Department of Education,* 854 F.2d 1285, 1291–92 (11th Cir.1988). In order to sift through the statistical disparities and competing explanations for disparities upon which such cases focus, *see Watson,* — U.S. at —, 108 S.Ct. at 2785, courts have developed a shifting allocation of burdens for the rational presentation of the evidence.

■ To make out a prima facie case under a disparate impact theory, the complaining party must demonstrate that the defendant employed a facially neutral employment practice that had a significant discriminatory effect. *Connecticut v. Teal,* 457 U.S. 440, 102 S.Ct. 2525, 2530, 73 L.Ed.2d 130 (1982); *Craig v. Alabama State University,* 804 F.2d 682, 685 (11th Cir.1986). Once a prima facie case is put forth, the employer must then show that the identified practice bears " 'a manifest relationship to the employment in question.' " *Connecticut v. Teal,* 457 U.S. at 446, 102 S.Ct. at 2530, quoting *Griggs v. Duke Power Co.,* 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971), and is thus justifiable as a "business necessity." *Griggs,* 401 U.S. at 430–31, 91 S.Ct. at 853. If the employer shows that the challenged procedure is sufficiently job-related, the

plaintiff may then attempt to demonstrate that other practices or criteria that have a lesser discriminatory effect could also suitably serve the employer's business needs. *Watson v. Fort Worth Bank and Trust,* — U.S. —, 108 S.Ct. 2777, 2795, 101 L.Ed.2d 827 (1988) (Blackmun, J., concurring in part and concurring in the judgment); *Craig v. Alabama State University,* 804 F.2d 682, 685 (11th Cir.1986).

■ The district court found that Stephen had established a prima facie case of disparate impact in PGA Sheraton's classification and discharge practices. Specifically, the court found that Stephen had presented statistical evidence showing that, during the time of his employment with PGA Sheraton, "the defendant utilized a job classification scheme which had the effect of discriminating against blacks ... [and] the defendant was engaging in discriminatory discharge practices." 669 F.Supp. at 1581. We need not address the validity of this finding to hold that PGA Sheraton successfully rebutted any prima facie disparate impact case by demonstrating that Stephen's termination rested on proper concerns of business necessity. In other words, even assuming that Stephen's statistical proof showed discrimination in the employer's classification and discharge procedures with respect to a protected class of employees, such evidence was not related to Stephen's termination because the district court found that, in Stephen's own case, the employer took the contested employment action for a legitimate non-discriminatory reason.[5]

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or ...

    (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

5. We are aware that the Supreme Court has not reached a consensus on the extent of the employer's burden in rebutting a prima facie disparate impact claim. *See Watson v. Fort Worth Bank and Trust,* — U.S. —, 108 S.Ct. 2777,

2790, 101 L.Ed.2d 827 (plurality opinion) ("Although we have said that an employer has 'the burden of showing that any given requirement must have a manifest relationship to the employment in question,' such a formulation should not be interpreted as implying that the ultimate burden of proof can be shifted to the defendant. On the contrary, the ultimate burden of proving that discrimination against a protected group has been caused by a specific employment practice remains with the plaintiff at all times") (citation omitted); *id.* 108 S.Ct. at 2792 (Blackmun, J., concurring in part and concurring in the judgment) ("Our cases make clear, however, that, contrary to the plurality's assertion, a plaintiff who successfully establishes this prima facie case shifts the burden of

Our conclusion that Stephen's termination was supported by business necessity is buttressed by the district court's finding that "the defendant has adequately shown that the reasons for this decision [to terminate the plaintiff from his job in the Purchasing Department] were based in fact and were legitimate in the face of the plaintiff's job performance." 669 F.Supp. at 1583. The evidence "established that the plaintiff did not adequately perform his job because of the plaintiff's inability to speak and understand English." *Id.* In particular, the court found "credible" and "convincing" the testimony of three witnesses from three different departments at PGA Sheraton that "the plaintiff could not understand English well enough to perform his assigned duty of bringing supplies to the various departments. The plaintiff's inability to understand English resulted in supplies being misdelivered.... At least one employee had to obtain her own supplies on several occasions." 669 F.Supp. at 1574–75. Clearly, the requirement that Stephen be able to speak and understand English with sufficient facility to adequately perform his assigned tasks had "a manifest relationship to the employment in question."[6] Accordingly, we find that

---

*proof*, not production, to the defendant to establish that the employment practice in question is a business necessity") (emphasis in original) (citation omitted); *id.* 108 S.Ct. at 2797 (Stevens, J., concurring in the judgment) (preferring to postpone further discussion of the appropriate evidentiary standards to be applied). Pending final resolution of this issue, however, this Circuit must adhere to the settled authority "stating flatly that the employer bears the burden of *proving* that a practice is job-related." *Powers v. Alabama Department of Education*, 854 F.2d 1285, 1292 n. 11 (11th Cir.1988) (emphasis in original).

Any uncertainty as to who has the burden of proof does not affect the disposition of the question before us. It is clear from the district court's opinion that the finding that Stephen was removed from his purchasing clerk job for legitimate reasons was not dependent on who had the burden of proof.

Because PGA Sheraton has proved as part of its case that Stephen was terminated for legitimate business reasons unrelated to any discrimination that may be extant, we need not decide in this case whether the causation element is part of the prima facie showing which an individual plaintiff must make when relying upon disparate impact, or whether it is properly part of the employer's rebuttal case to prove no causal connection between the employment action and the statistical evidence of discrimination. Where the disparate impact theory has been used in individual actions, as opposed to class actions, some courts have required a plaintiff to show as part of his prima facie case that he has been a victim of the practice or policy which allegedly resulted in discriminatory impact. *See Robinson v. Polaroid Corporation*, 732 F.2d 1010, 1016 (1st Cir.1984) ("[w]here the disparate impact doctrine has been used by the courts in individual actions rather than class actions, a plaintiff has been required to show that he personally has been the victim of discrimination by the general practice which allegedly resulted in a discriminatory impact on a protected group. It is not sufficient for an individual plaintiff to show that the employer followed a discriminatory policy without also showing that plaintiff himself was injured"); *Coe v. Yellow Freight System, Inc.*, 646 F.2d 444, 451 (10th Cir.1981) (same); *Tagatz v. Marquette University*, 681 F.Supp. 1344, 1358 (E.D.Wis. 1988), *aff'd*, 861 F.2d 1040 (7th Cir.1988) (same in context of age and religion discrimination suit). Although the Eleventh Circuit has not expressly addressed this question, several cases involving individual claims of disparate impact have involved a clear showing of individual harm on the part of the plaintiff. *See, e.g., Craig v. Alabama State University*, 804 F.2d 682 (11th Cir.1986) (white applicant not accepted for position for which black employee on leave was hired, was clearly harmed by university policy which granted hiring preferences to its current employees, where such policy reinforced existing racial distortions in workforce); *Nash v. Consolidated City of Jacksonville, Duval County*, 763 F.2d 1393 (11th Cir.1985) (black plaintiff who had failed promotion examination of city fire department clearly alleged personal harm in claim that examination adversely impacted black applicants); *Walker v. Jefferson County Home*, 726 F.2d 1554 (11th Cir.1984) (plaintiff not hired for supervisor's job suffered particularized harm from policy which required that supervisors have previous supervisory experience, where district court found that plaintiff had little or no supervisory experience and successful applicant was chosen because she had more recent supervisory experience).

**6.** *See Fragante v. City and County of Honolulu*, No. 87–2921 (9th Cir. Mar. 6, 1989) (1989 U.S.App. Lexis 2636) (applicant properly denied clerk's position because of his "heavy Filipino accent," where the oral ability to communicate effectively in English was reasonably necessary to the normal operation of the clerk's office, and applicant could point to no facts indicating his non-selection was based on factors other than his inability to communicate effectively with the public); *Mejia v. New York Sheraton Hotel* 459 F.Supp. 375 (S.D.N.Y.1978) employee chamber-

PGA Sheraton successfully rebutted Stephen's prima facie case, and thus no Title VII violation was proven as to this plaintiff.

Finally, we note that plaintiff does not dispute the legitimacy of the employer requirement that he adequately speak and understand English. Moreover, a review of the record indicates that plaintiff made no showing that the articulated reason for his discharge was pretextual. At trial Stephen contended that another employee in the Purchasing Department at the same time also had difficulty speaking English, but was not fired. The language problem, however, was described as "slight" in the co-worker's performance evaluation. 669 F.Supp. at 1575. In addition, the district court "found the plaintiff's claim that his co-worker's English was as poor as the plaintiff's to be unsubstantiated." 669 F.Supp. at 1583.

## CONCLUSION

PGA Sheraton took the challenged employment action against plaintiff for reasons which related directly to his job performance.[7] As PGA Sheraton has successfully rebutted any presumption of discrimination in plaintiff's case, no violation of Title VII has been shown. Accordingly, the judgment of the district court is, as to that portion of the judgment appealed from, REVERSED and REMANDED with instructions to enter judgment in favor of PGA Sheraton.[8]

REVERSED and REMANDED.

---

maid was properly denied promotion to front office position in hotel because of her "inability . . . to articulate clearly or coherently and to make herself adequately understood in the English language", where English proficiency requirement was "significantly related to successful job performance").

7. At oral argument Stephen made a vague reference to an argument which had not been raised previously and which we decline to address, i.e., that after Stephen was legitimately removed from the purchasing clerk job, he was discriminatorily assigned to housekeeping rather than another job category. This argument would have implicated the prima facie case which Stephen established and shifted to PGA Sheraton the burden of showing that "business necessity" mandated Stephen's assignment to housekeeping.

However, we decline to address this claim, because it was not raised in the district court. Neither the complaint itself, nor the pretrial order, nor Stephen's presentations to the district court ever fairly raised the argument.

8. The judgment awarding attorney's fees to plaintiff's counsel is also reversed.