Julia HOWELL, Plaintiff,

v.

LEVI STRAUSS & CO., Defendant.

Civ. A. No. 92–151–VAL (WDO).

United States District Court,
M.D. Georgia,
Valdosta Division.

Jan. 4, 1994.

Randall Arthur Schmidt, Savannah, GA, for plaintiff.

Robert P. Riordan, Atlanta, GA, William Gus Elliott, Valdosta, GA, for defendant.

## ORDER

OWENS, Chief Judge.

Before the court is defendant's motion for summary judgment. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

## FACTS

Plaintiff Julia Howell, a black female, was born on January 16, 1946. Plaintiff began

work with defendant Levi Strauss & Company's predecessor on April 20, 1966. From 1966 until 1990, plaintiff worked in the "inseam" position with defendant and its predecessor. In May of 1990, defendant conducted a time study of plaintiff to determine the optimal level of production at which plaintiff could operate. The study was conducted in response to plaintiff's inadequacy in meeting production levels. After continuing to perform below production levels, plaintiff was counseled on June 19, 1990. Subsequently, on August 28, 1990, plaintiff was suspended from her "inseam" position after failing to meet production levels for all but two weeks of 1990.[1] On November 12, 1990, defendant transferred plaintiff to the "attach watch pockets" position, a level III classification.[2]

As a trainee, plaintiff was expected to meet a production level of 42% her first week in the "attach watch pockets" position. Thereafter, in each of the following weeks, the production level would rise to 59% the second week, to 72% the third week, and to 83% the fourth week. The first week, plaintiff met 38% of production, only slightly below the expected level. The second week, plaintiff's production level dropped to 34%. The third week, plaintiff's production level was 45%. After the third week, plaintiff again was counseled regarding her low level of performance. As part of the counseling effort, defendant reduced the normal fourth week training level from 83% to 70%. Plaintiff, however, met only 48% of production in week four. As a consequence, plaintiff's employment was terminated. Plaintiff was replaced by Laverne Powell, a black female, born August 11, 1964.

On December 18, 1992, plaintiff filed suit against defendant. Plaintiff contends that her termination was due to age and race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. In response, defendant has filed a motion for summary judgment in which it contends that plaintiff is incapable of establishing a prima facie case for either race or age discrimination.

## DISCUSSION

[T]he plain language of [Federal Rule of Civil Procedure] 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The nonmoving party must put forth more than a "mere 'scintilla'" of evidence; "there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." United States v. Metropolitan Petroleum Co., 743 F.Supp. 820, 823 (S.D.Fla.1990).

■ A plaintiff asserting a cause of action under either Title VII or the Age Discrimination in Employment Act ("ADEA") bears the initial burden of establishing a prima facie case of discrimination. See Busby v. City of Orlando, 931 F.2d 764, 777 (11th Cir.1991); Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435, 1442 (11th Cir.1985). As developed by the complaint and the briefs filed in opposition to defendant's motion for summary judgment, plaintiff has attempted to establish defendant's liability under both a disparate treatment theory and a disparate impact theory. See MacPherson v. University of Montevallo, 922 F.2d 766 (11th Cir. 1991) (ADEA liability can be established under both a disparate treatment and disparate impact theory); Hill v. Seaboard Coast Line

---

1. The "inseam" position is a level VI position. A level VI position is classified as "relatively difficult." The lower the classification of a position, the less difficult the position is considered.

2. The "attach watch pockets" position is considered less difficult than the level VI "inseam" position.

*Railroad Co.*, 885 F.2d 804 (11th Cir.1989) (Title VII liability can be established under both a disparate treatment and disparate impact theory).

### I. Disparate Treatment

■ In order to establish a prima facie case of disparate treatment under either the ADEA or Title VII, a plaintiff must meet the four-part test set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also MacPherson*, 922 F.2d at 773; *Hill*, 885 F.2d at 807. The prima facie case set forth in *McDonnell Douglas* requires a plaintiff to show by a preponderance of the evidence: (1) plaintiff is a member of a protected group; (2) plaintiff was discharged; (3) plaintiff was qualified for the position; and (4) plaintiff was replaced by an individual outside the protected category. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824; *see also MacPherson*, 922 F.2d at 774; *Hill*, 885 F.2d at 808; *Lincoln v. Board of Regents*, 697 F.2d 928, 936 (11th Cir.1983).

#### A. ADEA

■ In the context of her age discrimination claim, there is no question that plaintiff can establish that she is a member of a protected class, that she was discharged, and that she was replaced by an individual outside the protected class. Plaintiff has failed, however, to establish that she is qualified for the "attach watch pockets" position. After failing to meet production levels in the "inseam" position, plaintiff was transferred to the less difficult position of "attach watch pockets." After failing to meet production quotas in her new position, plaintiff's employment was terminated.

Plaintiff contends that had she been given additional time to train, she could have met the production quotas. Although the Eleventh Circuit has rejected a mechanistic application of the *McDonnell Douglas* four-part framework to all ADEA claims, *see Goldstein*, 758 F.2d at 1442, a plaintiff must still establish that she is qualified for the position from which she was terminated. As the facts

in this case indicate, plaintiff was unable to meet production levels for all but two weeks of the period from January 1, 1990, to the middle of January, 1991. Despite being transferred to a less difficult position, plaintiff continued to perform well below expected levels. Merely alleging that she *could* meet production levels if given additional training does not establish that she was qualified for the position, especially in light of her sub-par performance over the previous year.

Plaintiff was given adequate opportunity to meet the expected production levels of defendant and failed to do so, even after defendant reduced the required level of production to 70%. Plaintiff has failed to put forth any evidence that she was qualified for the "attach watch pockets" position. Accordingly, plaintiff has failed to establish a prima facie case of disparate treatment under the ADEA.

#### B. Title VII

■ The analysis of plaintiff's disparate treatment claim under Title VII is roughly the same as the analysis of plaintiff's disparate treatment claim under the ADEA. As with her claim under the ADEA, plaintiff's disparate treatment claim under Title VII also fails because of plaintiff's failure to establish that she was qualified for the position from which she was terminated. In addition, however, plaintiff has also failed to prove that she was replaced by a person outside the protected class. Plaintiff is a black female. Plaintiff's replacement in the position of "attach watch pockets" is also a black female. Although the Eleventh Circuit has recognized that in certain situations a plaintiff can establish a prima facie case under Title VII even when the discharged employee is replaced by someone of the same race, *see Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir.1984), plaintiff must still establish that she was qualified for the position. As noted above, plaintiff has failed to meet this burden. Accordingly, plaintiff has failed to establish a prima facie case of disparate treatment under Title VII.[3]

---

3. Plaintiff has attempted to establish a prima facie case of disparate treatment by showing that

## II. Disparate Impact

In order to establish a prima facie case for disparate impact, a plaintiff must show: (1) that defendant employed a facially neutral employment practice that had a significant discriminatory impact; and (2) it is the application of that specific employment practice that has caused the disparity. *Hill,* 885 F.2d at 811; *see also MacPherson,* 922 F.2d at 771. The "significant discriminatory impact" may be established by statistical evidence indicating that a particular employment practice has had a disproportionate effect on a protected group. *See MacPherson,* 922 F.2d at 771 ("plaintiff must isolate and identify 'the specific employment practices that are allegedly responsible for any observed statistical disparities'"); *Hill,* 885 F.2d at 812.

Plaintiff's brief in opposition to defendant's motion for summary judgment fails to set forth any statistical evidence indicating that any employment practice of defendant has adversely impacted a protected group, whether that group is defined by race or age. Plaintiff alleges that a disparity exists between the racial makeup of the community in general and those persons in management positions for defendant. Merely alleging that a disparate impact exists, however, is not sufficient. It is plaintiff's burden to set forth evidence indicating that an employment practice of defendant has had a significant discriminatory impact. Plaintiff has failed to meet this burden. Accordingly, plaintiff has failed to establish a prima facie case for disparate impact under either the ADEA or Title VII.[4]

### CONCLUSION

Plaintiff has failed to establish a prima facie case of discrimination under either Title VII or the ADEA. Accordingly, defendant's motion for summary judgement is **GRANTED.**

**SO ORDERED.**

---

similarly situated individuals outside the protected class received more training than plaintiff received. Defendant has responded by setting forth individuals outside the protected class that received less favorable treatment than did plaintiff. As the Seventh Circuit noted in *Bush v. Commonwealth Edison Co.,* 990 F.2d 928, 931 (7th Cir.1993), however, only if the net effect of the statistics reveals a significant impact on a protected class will a prima facie case be established. *Bush,* 990 F.2d at 932 ("a pattern, in which blacks sometimes do better than whites and sometimes do worse, being random with respect to race, is not evidence of racial discrimination"). The effect of statistics in establishing a prima facie case of age and race discrimination is addressed further in the court's discussion of disparate impact analysis.

4. Plaintiff also contends that the presence of subjective criteria in the evaluation process creates a question of fact as to the alleged discriminatory use of the criteria. Plaintiff relies upon the decisions in *Parson v. Kaiser Aluminum & Chemical Corp.,* 575 F.2d 1374 (5th Cir.1978), and *Rowe v. General Motors Corp.,* 457 F.2d 348 (5th Cir. 1972), for this proposition. Plaintiff's argument, however, is without merit. The decisions in *Parson* and *Rowe* establish that a defendant may be liable when the *controlling* employment standards are vague and subjective, thus open to discriminatory use. *Parson,* 575 F.2d at 1386; *Rowe,* 457 F.2d at 358. The controlling employment standard in the present case is objective; that is, the employee's status is determined by the employee's ability to meet production levels. In addition, plaintiff was well aware of the required levels of production and the work product necessary to meet those levels. Accordingly, plaintiff cannot make out a prima facie case under the decisions in *Parson* and *Rowe.*