Louis W. GARNER, Plaintiff,

v.

Marvin T. RUNYON and John B. Waters, in their official capacities as Members of the Board of Directors for Tennessee Valley Authority, Defendants.

No. 90–AR–1296–NW.

United States District Court, N.D. Alabama, Northwestern Division.

April 18, 1991.

Curtis M. Simpson, Florence, Ala., for plaintiff.

Edward S. Christenbury, Justin M. Schwamm, Sr., Thomas F. Fine, Philip J. Pfeifer, Tennessee Valley Authority, Knoxville, Tenn., for defendants.

## MEMORANDUM OPINION

ACKER, District Judge.

This case is before the court on motion for summary judgment filed by defendants Marvin Runyon and John Waters, as Directors of Tennessee Valley Authority.

### Pertinent Undisputed Facts

Between March and June of 1987, TVA posted two notices of vacancies, Vacancy Announcement Number TLBFN–28 (VA–28) and Vacancy Announcement Number TLBFN–29 (VA–29), which were designed to fill approximately 75 nuclear plant laborer positions on the so-called "annual schedule". At TVA nuclear plant laborers on the "annual schedule" are paid more, receive better benefits, and have higher retention standing than nuclear plant laborers on the so-called "temporary hourly schedule". This means, of course, that the jobs are more desirable.

Of the approximately 75 persons ultimately selected to fill vacancies under VA–28 and VA–29, 21 were black. This percentage of blacks selected in response to the two announcements, considered in the aggregate, was virtually the same as the percentage of blacks in the entire applicant

pool. However, of the 22 selections under VA–28, considered separately from VA–29, only one was black. This single black hire was a retroactive placement made in August of 1988. The hires under VA–28 were made in June and/or July of 1987. Plaintiff, Louis Garner, who is black and who applied, was not selected under either announcement.

Both announcements were made in compliance with the terms of the General Agreement between TVA and the Tennessee Valley Trades and Labor Council, a collective bargaining agreement which at the time of the announcements had been revised through May 13, 1986. In selecting among the applicants who responded to VA–28 and VA–29, TVA determined whether or not each applicant met certain so-called "must-criteria". Applicants had to meet the "must-criteria" in order to be minimally qualified. One criterion, and the one here challenged by Garner as being discriminatory, was the requirement that applicants for "annual schedule" positions in a nuclear plant have no record of disciplinary suspension or termination occurring on or subsequent to January 1, 1985. TVA ascertained that Garner did not meet the minimum qualifications under this facially objective criterion. He had been suspended from work between February 26 and March 7, 1986, for assaulting a co-worker while working as a nuclear plant laborer on the temporary hourly schedule at Brown's Ferry. Garner admits this assault. No one with a disciplinary record like Garner's was selected under either announcement.

After not being selected, Garner pursued his administrative remedies and fulfilled all administrative prerequisites to filing this suit.

In the pre-trial order entered in this case, Garner makes no claim based on the hiring practices under VA–29. He only complains about VA–28 as it was applied to him. The court is not sure why Garner does not complain under VA–29 TVA which had an affirmative action plan that gave certain applicants who passed minimum qualifications additional points or a preference. This court has had experience with TVA's affirmative action programs. *See Liao v. Dean,* 658 F.Supp. 1554 (N.D.Ala.1987), *rev'd by Liao v. Tennessee Valley Authority,* 867 F.2d 1366 (11th Cir.1989), *cert. denied, Liao v. Dean,* — U.S. —, 110 S.Ct. 1806, 108 L.Ed.2d 937 (1990). Whether or not influenced by this affirmative action program, but admittedly under a different selection process in November of 1988, after sufficient time had lapsed since his disciplinary infraction, Garner was selected for an annual nuclear plant laborer position under a later vacancy announcement. This fact may or may not explain Garner's not complaining about VA–29.

Defendant Marvin Runyon is Chairman of the Board of Directors of TVA. Defendant John Waters is the only other member of the Board.

### Conclusions of Law

This court has federal question jurisdiction under 28 U.S.C. § 1331 because Garner claims that he was discriminated against based on his race in an employment decision made by a federal employer, namely, TVA. If true, such an act of discrimination is proscribed by Title VII, 42 U.S.C. § 2000e–16.

In the pre-trial order the only Title VII theory advanced by Garner is one of disparate impact. However, under Rule 56 consideration the court will look at Garner's claim as if it were a disparate treatment claim as well as a disparate impact claim.

Despite a court's understandable and routine reluctance to decide a Title VII case on a Rule 56 motion, "[s]ummary judgments for defendants are not rare in employment discrimination cases." *Earley v. Champion Int'l Corp.,* 907 F.2d 1077 (11th Cir.1990), *citing, Mauter v. Hardy Corp.,* 825 F.2d 1554 (11th Cir.1987); *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590 (11th Cir.1987); *Palmer v. District Bd. of Trustees,* 748 F.2d 595 (11th Cir.1984); *Pace v. Southern Ry. Sys.,* 701 F.2d 1383 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983); *Simmons v. McGuffey Nursing Home, Inc.,* 619 F.2d 369 (5th Cir.1980). Whether or not rarely

used, Rule 56 is a rule adopted for a reason.

In order to make out a prima facie case of disparate treatment under Title VII, Garner must prove:

1) that he was a member of a protected class,

2) that he was qualified for the position for which he applied,

3) that TVA was seeking to select persons of his qualifications, and

4) that a person outside of the protected class, with similar or lesser qualifications, was selected.

*See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, n. 6, 101 S.Ct. 1089, 1094, n. 6, 67 L.Ed.2d 207 (1981), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). If such a prima facie case had been presented by Garner, he would have established a "rebuttable presumption" of discrimination, but this presumption, which does not exist here, would disappear if TVA has articulated a legitimate non-discriminatory reason for its action. *Burdine*, 450 U.S. at 254, 257–58, 101 S.Ct. at 1094, 1095–96. The last piece of this disparate treatment model allows Garner to overcome TVA's articulation of a legitimate reason for selecting someone else by a showing that the articulated reason was nothing but a pretext for the real motivation, namely, Garner's race. *Id.*

Garner's prima facie case is not made out because he has put forth no evidence that he was "qualified" under the requirements of VA–28 or VA–29. It therefore becomes obvious why he did not attempt a disparate treatment theory. He does not dispute the fact that he had the proscribed disciplinary blemish on his record, nor does he dispute that he was treated just as all those who had been disciplined during the job precluding time period were treated. *No one with such a disciplinary record was selected, black, white, male or female.* Therefore, Garner does not and cannot make out a prima facie case of discrimination under a disparate treatment analysis, making it un-necessary to evaluate TVA's articulated nondiscriminatory reason for the non-selection. "In the absence of a showing of disparate impact, then, the establishment, without validation through proof of business necessity, of a legitimate, nondiscriminatory requirement for [selection] actually applied and enforced satisfied defendants' [disparate treatment] burden." *Foster v. Bd. of School Comm'rs*, 872 F.2d 1563, 1568–69 (11th Cir.1989).

The only theory asserted by Garner in the pre-trial order is the theory of disparate impact. Disparate impact claims under Title VII seek to prove that certain facially neutral employment practices have significant adverse effects on protected groups, even in the absence of evidence that those practices were adopted with discriminatory motive or intent. *Watson v. Ft. Worth Bank and Trust*, 487 U.S. 977, 986–87, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827 (1988). "The evidence in these 'disparate impact' cases usually focuses on statistical disparities rather than on specific incidents, and on competing explanations for those disparities." *Id.* at 987, 108 S.Ct. at 2784. Disparate impact cases therefore focus on the impact that a particular hiring or firing practice has on employment opportunities for protected class members. *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989).

To have made out a prima facie case under his disparate impact theory, Garner must have demonstrated that defendants employed a facially neutral employment practice that had a significant discriminatory effect as applied to blacks. *Stephen v. PGA Sheraton Resort, Ltd.*, 873 F.2d 276, 279 (11th Cir.1989). However, in addition to identifying a specific employment practice (in this case the requirement that there be no disciplinary record for a twenty-four month period preceding application), and showing statistical disparities, *causation* must be demonstrated. *Watson*, 487 U.S. at 994, 108 S.Ct. at 2788–89. "[P]laintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has *caused* the exclu-

sion of applicants for jobs or promotions because of their membership in a protected group." *Id.* (emphasis supplied). Once a prima facie case appears, if it does, defendants must show that the complained of practice has significant and legitimate bearing on the employment decision in question and is therefore justifiable as a business necessity. *Stephen,* 873 F.2d at 279 (citations omitted). In such event Garner, theoretically and actually, might yet prevail, that is, if he has presented evidence to indicate that the practice or articulated reason is a pretext for racial discrimination, something which requires proof of motive. *Id.*

■ The TVA practice of requiring "clean" disciplinary records under both VA–28 and VA–29 was clearly a facially neutral and an entirely objective criterion. Viewing the two announcements and the selections in tandem, the court, in the first place, can find no significant discriminatory effect.[1] In fact, the selection percentage of black applicants mirrors almost exactly the percentage of blacks in the applicant pool. Garner wishfully focuses on VA–28 in which only one black was selected for 22 available positions, the black being selected approximately a year after the announcement. Assuming *arguendo* that the evidence applicable to VA–28 alone is sufficient to show significant discriminatory effect, the causation issue must be examined.[2] Focusing alone on VA–28, which is not what Garner did in his complaint, one could argue that the minimum requirement of a "clean" disciplinary record was responsible for causing a disparity in the racial distribution of the jobs. In VA–28 there were 30 black applicants out of 126 applicants for 22 jobs. The requirement of a "clean" disciplinary record actually resulted in the disqualification of only 8 people, 3

of whom were black, 4 of whom were white and one of whom was Hispanic. Only one black was hired under VA–28. Though it is a tenuous argument, one might argue that the minimum requirement of a "clean" disciplinary record was the cause of a disparity because without it there might have been 4 black hires out of 22, a ratio of black to white that approximates that of the applicant pool. This scant statistical evidence within a very small universe is not of the kind and degree to demonstrate statistically that the practice actually caused the exclusion of black applicants.[3] This may explain why Garner offered no affidavit or sworn deposition of a labor economist or statistician, because no reputable expert could state an opinion of disparate impact on such evidence.

■ Leaving Aristotle behind in order to assume for the sake of the argument that Garner makes out a prima facie case of disparate impact, Garner nevertheless would fail because defendants have shown clearly and without legitimate dispute that their requirement of a "clean" disciplinary record bears a manifest and important relationship to the right to work in a nuclear plant and therefore that the requirement is more than amply justified as a business necessity. The job descriptions for VA–28 and VA–29 sought nuclear plant workers who were to work in cooperation with craftspersons, nuclear plant employees using breathing apparatus, nuclear plant visitors under escort, and health physics personnel. With irrefutable logic and a dose of common sense, defendants demonstrate a need for disciplined workers due to the close contact with fellow workers and outside visitors in a highly visible plant well known for a public perception of danger and overriding need for stringent safety measures. In this case, where a recently

---

1. See e.g., *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975) (plaintiffs were required to show that the tests in question selected applicants in a pattern by race significantly different from that of the applicant pool).

2. In *Watson,* the Court noted that small or incomplete data sets may not be reliable. 487 U.S. at 996–97, 108 S.Ct. at 2789–90.

3. See *Griggs v. Duke Power Co.,* 401 U.S. 424, 426, 91 S.Ct. 849, 851, 28 L.Ed.2d 158 (1971) (statistical disparity found when requirements operated to disqualify blacks at a substantially higher rate than whites—a markedly different situation from the instant case).

recorded act of misconduct automatically results in non-selection for a nuclear plant job, disparate impact succumbs to the disparate treatment analysis.

It must be emphasized in this case that there is no evidence to suggest that TVA in the past had disciplined blacks more often or more severely than it had whites who committed the same or similar infractions. If discipline had been meted out unfairly or unevenly by race, reflecting a pattern of discrimination, disparate impact might be a viable theory when prior discipline is used as a criterion for job selection or promotion. However, there is not a hint of such a scenario from the evidentiary materials presented to the court.

On these undisputed facts, the court has no basis upon which it could find that TVA did not institute a reasonable and facially neutral minimum standard for persons to work as annual employees in a nuclear plant. This court is not asked to sit as a personnel agency or as a safety committee. Therefore, it is not commissioned with the authority to decide whether a slightly longer or a slightly shorter period of time with a "clean" disciplinary record would have been a more appropriate criterion. This court can and does determine that the complained of standard was sufficiently related to nuclear safety and to plant efficiency to constitute a "business necessity" for TVA as a matter of fact and of law.

Employers under Title VII are not required to introduce formal studies to show that certain criteria accurately and invariably predict on-the-job performance. *Watson,* 487 U.S. at 996–97, 108 S.Ct. at 2789–90. For instance, in *New York City Transit Authority v. Beazer,* 440 U.S. 568, 587, n. 31, 99 S.Ct. 1355, 1366, n. 31, 59 L.Ed.2d 587 (1979), the Supreme Court noted as obvious that "legitimate employment goals of safety and efficiency" allow exclusion of methadone users from employment with the New York City Transit Authority. It goes without saying that a methadone user may, in actual fact, over a period of time prove to be a better employee than a non-user, but making a distinction between the two in the initial hiring process cannot be described as arbitrary, capricious or unfair. It has a rational basis, and does not impact on any protected class except favorably upon the riding public as a class deserving of protection.

Garner adduces no evidence whatsoever to show that any of defendants' reasons given for the "clean" record standard are a pretext. Rather, all of the evidence serves to reinforce the court's conclusion that there was no disparate impact or treatment. The fact that Garner was later hired for an annual nuclear plant laborer position after sufficient time had passed to "clean" his disciplinary record is only the frosting on the defendants' Rule 56 cake.

In summary, Garner has failed to meet his burden under *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). He has introduced no specific evidence of disparate impact. He relies on mere subjective personal conclusions as to his own qualifications relative to those of his white competition. See *Early v. Champion Int'l Corp.,* 907 F.2d 1077, 1084 n. 5 (11th Cir.1990), *Carter v. Miami,* 870 F.2d 578, 585 (11th Cir.1989). This is one of those rare but apparently increasing number of Title VII cases which is subject to final disposition under Rule 56. Summary judgment will be granted in favor of defendants, and an appropriate, separate order of dismissal will be entered.